UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CANDICE LORRAINE PARKER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:23-cv-0656 (RC) |
| SOLIS MAMMOGRAPHY, | ) ) ) | |
| Defendant.[1] | ) ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 18). For the reasons discussed below, the Court GRANTS the motion.

**I. LEGAL STANDARD**

Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the complaint, as amended, fails to state claims upon which relief can be granted. *See generally* Def.'s Mem. of Law in Support of its Mot. to Dismiss Pl.'s Am. Compl. (ECF No. 18-1, "Def.'s Mem.") at 8-20.

To survive a Rule 12(b)(6) motion, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In

---

[1] The parties' disagreement about defendant's proper corporate identity, *see* Am. Compl. ¶ 1 (Washington Radiology or Solis Mammography); Def.'s Corp. Disclosure Statement (ECF No. 7) (Comprehensive Breast Care Center of Texas, Inc.), is not material and does not change the outcome of this case. The Court refers to plaintiff's former employer as "defendant," and for administrative convenience, the caption of the case does not change.

considering such a motion, the Court must construe the complaint "liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The Court neither accepts plaintiff's legal conclusions as true, *see id.*, nor presumes the veracity of legal conclusions couched as factual allegations, *see Twombly*, 550 U.S. at 555.

Complaints filed by *pro se* litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and the Court must consider a *pro se* litigant's complaint "'in light of' all filings," *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (quoting *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)). Here, the Court considers plaintiff's original complaint (ECF No. 1, "Compl."), amended complaint (ECF No. 16, "Am. Compl."), opposition to defendant's motion to dismiss (ECF No. 24, "Pl.'s Opp'n"), and all of her exhibits.

## II. BACKGROUND

Defendant hired plaintiff in May 2017, and by the time of her termination in April 2021, plaintiff had become a Patient Service Representative/New Hire Trainer. *See* Compl., Ex. (ECF No. 1-1) at 1 ("EEO Charge"); Am. Compl. ¶ 1; Pl.'s Opp'n at 2. Unfortunately, plaintiff became a patient of her employer. *See* Pl.'s Opp'n at 6; Compl. at 5. In 2020 she "had a Cancer scare," Pl.'s Opp'n at 2, and underwent a "medical procedure . . . at the job site," Compl. at 5. A co-worker allegedly "violated [plaintiff's] patient rights," Pl.'s Opp'n at 2, under the Health Insurance Portability and Accountability Act ("HIPAA"), *see* Compl. at 5, by "read[ing her]

mammogram biopsy report," Pl.'s Opp'n at 2, and informing plaintiff she had done so, *see id.*; Compl. at 5. Plaintiff reported the co-worker's conduct to supervisors, and the co-worker was reprimanded. *See* Pl.'s Opp'n at 2, 4.

Plaintiff's "Cancer scare . . . triggered [her] need for therapy." *Id*. She requested, and defendant approved, intermittent leave under the Family and Medical Leave Act ("FMLA"), Pl.'s Opp'n at 2, so that plaintiff could attend "Behavior Health sessions with a Mental Health Specialist approved by the Medical Insurance of the [defendant] through FMLA," Compl. at 6; *see* Am. Compl. ¶¶ 2, 4; Pl.'s Opp'n at 2. Plaintiff has submitted "FMLA Behavioral Health Leave Approval documentation," Am. Compl. ¶ 2; *see id.*, Ex. (ECF No. 16-1) at 3-5, for visits to a "State Licensed Psychiatrist," Am. Compl. ¶ 2; *see id.* ¶ 3, for what she considers an "ADA defined disability," *id*. ¶ 2, labeled "Mental Health," Compl. at 4.[2]

According to plaintiff, the report of her co-worker's conduct and the co-worker's reprimand marked the point "when the harassment/retaliation started," Pl.'s Opp'n at 2; *see id*. at 4; Compl. at 5, although she "did not begin to have any of the negative occurrences until [she] began Mental Health treatment," Pl.'s Opp'n at 3. Supervisors allegedly bullied plaintiff. *See* Compl. at 5. The co-worker responsible for the purported HIPAA violation allegedly would "harass and antagonize [plaintiff] during the work shift," Pl.'s Opp'n. at 2, and this co-worker "along with Supervisors on site monitored [plaintiff] day-to-day, hovering over [her] and causing extra anxiety throughout [her] work day," *id*. at 4. On one occasion, the assistant office manager "yelled at [plaintiff] and repeatedly told [plaintiff] to 'shut up.'" Pl.'s Opp'n. at 2. Plaintiff alleged that other co-workers monitored her "ins and outs," EEO Charge at 1, such as "when

---

[2] The mental health professional appears to have been a licensed clinical psychologist, not a psychiatrist. *See* Pl.'s Opp'n, Ex. (ECF No. 24-1) at 4, 7, 10.

[she] went to the restroom, how long [she] took for lunch, when [she] return[ed] to [her] desk, and when [she] clocked in/out," *id*., and reported these events to her supervisor, *see id*. Plaintiff "was disciplined," *id*., while co-workers "ran errands while on the clock and clocked/out from their cell phones and no corrective action was taken against them," *id*. Plaintiff claimed to have been "erroneously charged with numerous attendance violations," Compl. at 5, and "disciplined for calling out sick although [she] had FMLA [and] was out on approved leave," EEO Charge at 1.

Plaintiff "placed about 5 Solis Mammography Hotline complaints in 2021 to seek . . . help." Am. Compl. ¶ 4; *see* Pl.'s Opp'n at 2-3. According to plaintiff, each complaint "was made in reference to needing assistance in the workplace," Pl.'s Opp'n at 3, and appear to have pertained to alleged harassment plaintiff experienced, *see, e.g*., Am. Compl. ¶ 4; Pl.'s Opp'n at 4, a request for a reasonable accommodation for her alleged disability, *see, e.g*., Am. Compl. ¶ 4; Pl.'s Opp'n at 3, protected activity of some sort, *see, e.g*., Am. Compl. ¶ 3; Pl.'s Opp'n at 3-4, or the hostile work environment to which plaintiff allegedly was subjected, *see, e.g*., Am. Compl. ¶ 4; Pl.'s Opp'n at 4. Plaintiff alleged that "[e]very case was closed . . . with no resolution, or even a conversation as to how to assist [her] in protecting [herself] on the job site." Pl.'s Opp'n at 2-3.

Although plaintiff's last performance evaluation gave her "a Bad Rating," Am. Compl. ¶ 4, plaintiff was awarded a pay raise which she did not enjoy because she was terminated prior to its effective date. *Id*.; *see* Compl. at 6. Plaintiff applied for unemployment insurance benefits after her termination, which defendant attributed to "excessive absenteeism and tardiness." Determination by Claims Examiner (ECF No. 1-2) at 1. Initially, plaintiff was disqualified from receiving benefits, and the Claims Examiner reasoned:

> In this case, the claimant was warned that her attendance was not satisfactory prior to being discharged. The claimant's unexcused

>   absences and repeated failure to report to work was a willful disregard of the employer's interest. Therefore, the claimant's actions constitute misconduct, and unemployment insurance benefits are denied.

*Id*., Ex. at 1. Plaintiff successfully "fought the allegations of Termination due to Attendance," Am. Compl. ¶ 4, and in July 2021, "was compensated with funds, but not [her] job back," *id*. In this action, plaintiff demands "damages to include [her] total salary for the time [she] was terminated until this goes to court." Compl. at 6.

### III. DISCUSSION

In the original complaint, plaintiff alleges that defendant violated the Americans with Disabilities Act ("ADA"), *see* 42 U.S.C. §§ 12102-12213, by failing to accommodate her disability, subjecting her to unequal terms and conditions of employment, retaliating against her, and subjecting her to a hostile work environment. Although the amended complaint does not address, and barely mentions, the four claims of the original complaint, the Court presumes that plaintiff has not abandoned them. Rather, the amended complaint adds a claim under the Whistleblower Protection Act ("WPA") and invokes protection under the National Labor Relations Act ("NLRA") with respect to plaintiff's retaliation claim. *See* Am. Compl. ¶¶ 2-3. Before addressing the ADA claims, the Court disposes with the WPA and NLRA claims.

#### A.  Whistleblower Protection Act and Labor Relations Act Claims

The WPA, *see* 5 U.S.C. § 2302, applies to federal employees, *see, e.g.*, *Gibbs v. United States*, 517 F. App'x. 664, 668 (11th Cir. 2013) (holding that the remedies provided under the WPA "are a government employee's exclusive remedies when challenging a federal personnel action taken against him"); *Elliot v. American Fuel Cell and Coated Fabrics, Co*., No. 12-cv-1033, 2013 WL 3992709, at *3 (W.D. Ark. Aug. 5, 2013) ("The Whistleblower Protection Act, by its terms, applies only to federal employees"); *see also Taylor v. Heartland Hospice*, No.

3:08-cv-3307, 2009 WL 3157328, at *1 (D.S.C. Sept. 25, 2009) ("The Whistleblower Protection Act, 5 U.S.C. § 2302 would not apply since it has no application to private employers . . ."), and defendant "is not part of the federal government," Def.'s Mem. at 19.

Regarding the NLRA, the Court concurs with defendant's assessment that "the [National Labor Relations Board (NLRB)] has primary jurisdiction over NLRA claims." Def.'s Mem. at 19 (citing *Workers of Am. v. Beck*, 487 U.S. 735, 742 (1988)). If there were a claim "within the purview of the NLRB, state and federal courts are preempted from hearing it." *Id*. at 19-20 (quoting *Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp*., 815 F.3d 834, 839 (D.C. Cir. 2016)).

### B. Americans with Disabilities Act Claims

#### 1. Plaintiff's "Disability"

Generally, the ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, employee compensation, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To bring a claim under the ADA, a plaintiff must demonstrate she is disabled within the meaning of the statute, *see Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008), which defines the term "disability" as follows:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment[.]

42 U.S.C. § 12102(1). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. §

12102(2)(A). "The term 'substantially limits' is construed broadly" and "is not meant to be a demanding standard." 42 C.F.R. § 1630.2(j)(1)(*i*).

There are allegations, *see* Am. Compl. ¶ 4; Pl.'s Opp'n at 1-2, supporting an inference that plaintiff is a "qualified individual," that is, "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The glaring deficiency of plaintiff's submissions is the lack of factual allegations showing she had a disability as the ADA defines the term.

### a. Mental Impairment

In wholly conclusory fashion, plaintiff claims to have "an ADA defined disability," Am. Compl. ¶ 2, identified only as "Mental Health," Compl. at 4. Although plaintiff may have had a "diagnosis of a mental health condition," Am. Compl. ¶ 3, her pleadings fall far short of demonstrating an actual "mental impairment." 42 U.S.C. § 12102(1)(A). Plaintiff does not name the mental health condition, state a diagnosis, or explain whether, how and to what extent the mental health condition limits a major life activity. And even if plaintiff's purported mental impairment limits a major life activity, there are no factual allegations showing that the limitation is substantial.

### b. Record of Mental Impairment

"An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental . . . impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). Plaintiff claims to have such a record. She relies upon "the information from [a] State Licensed Psychiatrist, also FMLA Behavioral Health Company Leave Approval documentation," Am. Compl. ¶ 2; *see id*. ¶ 3, and defendant's approval of

intermittent leave under FMLA, *see id.*, Ex. (ECF No. 16-1) at 3, which she appears to have used for visits with a mental health professional, *see id.*, Ex. (ECF No. 16-1) at 4-5; *see also* Pl.'s Opp'n, Ex. (ECF No. 24-1) at 7, 10.  These allegations tend to show plaintiff proved to defendant's satisfaction an entitlement to leave "[b]ecause of a serious health condition that [made plaintiff] unable to perform the functions of [her] position[.]" 29 U.S.C. § 2612(a)(1)(D); *see id.* § 2612(b)(1).

Under FMLA, a "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).  Nothing in plaintiff's submissions tends to show that a "serious health condition" for purposes of FMLA amounts to a "disability" for purposes of the ADA.  "[T]he structure of the [ADA and FMLA] are fundamentally different." *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1373 (D.C. Cir. 2020).  For example, "[t]he scope of entitlements under the ADA includes a range of reasonable accommodations while the FMLA authorizes only leave." *Id.* (citations omitted).  That defendant approved leave under FMLA does not establish plaintiff's history of a mental impairment, or that defendant misclassified her as having a mental impairment, or that the purported mental impairment substantially limits a major life activity.

### c. Regarded as Having a Mental Impairment

"In order to proceed under a 'perceived disability' theory, [p]laintiff must show that she was subjected to an action prohibited under the ADA 'because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.'" *Epps v. Potomac Elec. Power Co.*, 389 F. Supp. 3d 53, 63 (D.D.C. 2019) (quoting 42 U.S.C. § 12102(3)(A)), *on recons.*, No. 18-cv-1423 (CKK), 2019 WL 7902976 (D.D.C. Sept. 20,

2019). Here, there simply are no factual allegations supporting an inference that defendant perceived plaintiff as having a mental impairment. *See Gallo v. Washington Nationals Baseball Club, LLC*, No. 22-cv-1092 (APM), 2023 WL 2455678, at *4 (D.D.C. Mar. 10, 2023) (concluding plaintiff "failed to state a 'regarded as' disabled claim because he has not alleged that Defendant perceived him to have a disability at the time of his termination").

Plaintiff may have a mental impairment, but "[m]erely having an impairment does not make one disabled for purposes of the ADA." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 195 (2002), *overturned by statute on other grounds* (2009). Absent sufficient factual allegations showing plaintiff had a disability as the ADA defines the term, all ADA claims fail. *See Anderson v. CloudHQ LLC*, No. 24-cv-0916 (JMC), 2024 WL 2152464, at *3 (D.D.C. May 14, 2024) (dismissing disparate treatment and failure to accommodate claims where plaintiff "does not allege facts sufficient to plausibly establish that being 'afraid of dogs' renders her 'disabled' within the meaning of the ADA"); *Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*, No. 23-cv-0311 (CKK), 2023 WL 6199078, at *10 (D.D.C. Sept. 22, 2023) ("As Plaintiff has failed to plead the facts sufficient to show that he is disabled within the meaning of the ADA[], the Court finds that his claim must fail, and need not discuss the other elements of a disability discrimination claim"), *aff'd in relevant part*, No. 23-7141, 2024 WL 2790385 (D.C. Cir. May 29, 2024) (per curiam); *Obia v. J.P. Morgan Chase & Co.*, No. 19-cv-2340 (BAH), 2020 WL 5411169, at *6 (D.D.C. Sept. 9, 2020) ("Plaintiff's disability claims fail for being wholly insufficient in alleging facts that would identify the disability or establish that his condition qualifies as a disability under the ADA."); *Washington v. Levy Food Serv.*, No. 18-cv-2742 (ABJ), 2019 WL 2617428, at *3 (D.D.C. June 26, 2019) (dismissing ADA claim where plaintiff proffered "[d]ocumentation of doctor visits and medical tests," yet "still has not

identified her disability"). That said, even if plaintiff had alleged disability adequately, there are independent bases for dismissal of the failure to accommodate, disability discrimination, retaliation, and hostile work environment claims.

### 2. Failure to Accommodate

An employer can discriminate by "not making reasonable accommodations to the known . . . mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business[.]" 42 U.S.C. § 12112(b)(5)(A). A viable claim requires factual allegations that the employee was disabled; the employer had notice of the employee's disability; the employee was able to perform essential functions of her position with or without reasonable accommodation; and the employer denied her request for reasonable accommodation. *See Solomon v. Vilsack*, 763 F.3d 1, 9 (D.C. Cir. 2014); *Hester v. Paul Pub. Charter Sch.*, No. 21-cv-3166 (JEB), 2023 WL 355913, at *4 (D.D.C. Jan. 23, 2023). Plaintiff's claim fails because her submissions do not demonstrate she ever requested a reasonable accommodation.

"An employee's request for an accommodation does not need to be in writing or use the specific phrase 'reasonable accommodation,' but the request must make sufficiently clear that the employee 'wants assistance with . . . her disability so that . . . she may return, or continue, to work.'" *Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 87 (D.D.C. 2021) (quoting *Badwal v. Bd. of Trustees of Univ. of District of Columbia*, 139 F. Supp. 3d 295, 3143(D.D.C. 2015)) (additional citation omitted). There are no alleged facts identifying what accommodation plaintiff requested, to whom she made the request, how the requested accommodation pertained to the performance of her former position, or when she made the request. At most, plaintiff

complains that "all attempts to gain Reasonable Accommodations for my protected ADA rights were ignored," Am. Compl. ¶ 4, and claims "[t]he reasonable accommodation request was never seen through because it was never created in the first place, since HR didn't allow me the opportunity to be heard," Pl.'s Opp'n at 3.

Missing, too, are allegations sufficient to support an inference defendant was on notice of plaintiff's mental impairment. She cannot rely on her request for FMLA leave as a substitute for requesting a reasonable accommodation for a disability. *See Murphy v. District of Columbia*, No. 18-cv-1478 (JDB), 2022 WL 2643554, at *2 (D.D.C. July 8, 2022) ("Given the statutory differences between the FMLA and the ADA, an application for medical leave under the FMLA does not automatically constitute a request for a reasonable accommodation under the ADA."); *see also Waggel*, 957 F.3d at 1373. While "there may well be cases where the plaintiff's need for an accommodation is so apparent that the defendant must offer one regardless of whether the plaintiff requested it," *Chenari v. George Washington Univ.*, 847 F.3d 740, 748 (D.C. Cir. 2017), this plaintiff has not alleged facts demonstrating that her need for accommodation was so obvious.

With a failure to accommodate claim, "there is an underlying assumption . . . that the plaintiff-employee has requested an accommodation which the defendant-employer has denied." *Murphy*, 2022 WL 2643554, at *2 (quoting *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999)) (internal quotation marks and brackets omitted). Here, plaintiff does not allege plausibly that she ever requested an accommodation, let alone that defendant denied one.

### 3. Disability Discrimination

A well-pled disability discrimination complaint alleges that plaintiff was disabled; that she qualified for her former position; and that she suffered an adverse employment action

because of her disability. *See, e.g., Blackwell v. SecTek, Inc.*, 61 F. Supp. 3d 149, 156 (D.D.C. 2014). Assuming for purposes of this discussion that plaintiff was disabled, that she was qualified for her former position, and that termination is the relevant adverse employment action, the pleadings fail to allege facts supporting an inference that defendant terminated plaintiff because of her disability. Plaintiff offers either conclusory statements, *see* Am. Compl. ¶ 3 ("[t]he Mental Health condition in question . . . led to [her] termination"), or nonsensical statements, *see id.* ¶ 2 ("termination was[] wrongfully enforced under the discrimination of persons Under an Protected Entity").

Because no alleged facts plausibly tie plaintiff's disability to her termination, the disparate treatment claim fails. *See Squires v. Gallaudet Univ.*, No. 20-cv-1348 (ABJ), 2021 WL 4399554, at *14 (D.D.C. Sept. 27, 2021) (dismissing disability discrimination claim where plaintiff "alleges no facts that could show, directly or indirectly, that her supervisor or the school harbored any bias against her [because she was hard-of-hearing while her colleagues were deaf], or that could give rise to a plausible inference that her abilities played a role in her termination"); *cf. Montgomery v. McDonough*, No. 22-cv-1715 (RC), 2023 WL 4253490, at *10 (D.D.C. June 29, 2023) (dismissing disability discrimination claim under Rehabilitation Act where "the complaint fails to connect . . . adverse actions to [plaintiff's] disability or allege that they were the result of discrimination.").

### 4. Retaliation

Under the ADA, it is unlawful for an employer to retaliate against an employee "on account of . . . her having exercised or enjoyed . . . any right granted or protected by" the ADA. *Congress v. District of Columbia*, 324 F. Supp. 3d 164, 170 (D.D.C. 2018) (citing 42 U.S.C. § 12203) (additional citations omitted). A viable claim calls for allegations that the employee

engaged in protected activity; she suffered an adverse employment action; and there exists a causal link between the two.  *See Congress*, 324 F. Supp. 3d at 170 (citing *Solomon v. Vilsack*, 763 F.3d 1, 14 (D.C. Cir. 2014)); *see also Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005) (applying framework for Title VII cases to ADA retaliation cases under § 12203).  For these purposes, an adverse employment action "is one that 'could well dissuade a reasonable [person] from making or supporting a charge of discrimination.'"  *Brown v. Trinity Washington Univ.*, No. 22-cv-1612 (JDB), 2023 WL 2571729, at *5 (D.D.C. Mar. 20, 2023) (quoting *Porter v. Shah*, 606 F.3d 809, 817–18 (D.C. Cir. 2010)).  Termination qualifies as an adverse employment action, as the prospect of termination presumably would dissuade a reasonable person from engaging in protected activity.

Plaintiff correctly observes that "[a] request for reasonable accommodation is . . . a protected activity."  Am. Compl. ¶ 2.  The problem is the pleadings' utter failure to allege plausibly that plaintiff ever requested an accommodation.  Plaintiff's complaints to defendant's Compliance Hotline, *see, e.g.,* Pl.'s Opp'n at 2, 3, might qualify as protected activity, but there is no apparent connection between complaints about "disrespect," *id*. at 2, or "about how [plaintiff] was being mistreated in the workplace," *id*. at 2, and plaintiff's purported disability.  Nor does a bare assertion that defendant "took negative employment action against [plaintiff] for attempting to assert [her] rights as a person with a disability," *id*. at 4, amount to a plausible allegation of retaliation for having engaged in protected activity.

### 5. Hostile Work Environment

"To establish a *prima facie* hostile work environment claim based on disability, a plaintiff must allege facts demonstrating that: '(1) she is disabled or is perceived as disabled; (2) she was subjected to unwelcome harassment; (3) the harassment occurred because of her disability or the

perception that she was disabled; (4) the harassment affected a term, condition, or privilege of employment; and (5) there is a basis for holding the employer liable for the creation of the hostile work environment."' *Thompson v. District of Columbia*, 272 F. Supp. 3d 17, 23 (D.D.C. 2017) (quoting *Floyd v. Lee*, 968 F. Supp. 2d 308, 328 (D.D.C. 2013)).  And to this end, a plaintiff must allege facts showing that, because of her employer, she was subjected to "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (internal quotations omitted).  The Court must "look[ ] to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance."  *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)).  This standard is "demanding," *Whorton v. Wash. Metro. Area Transit Auth.*, 924 F. Supp. 2d 334, 350 (D.D.C. 2013), and "it must be clear that the hostile work environment was the result of discrimination based on a protected status," *Ragsdale v. Holder*, 668 F. Supp. 2d 7, 26 (D.D.C. 2009) (quoting *Childs–Pierce v. Util. Workers Union of America*, 383 F. Supp. 2d 60, 77 (D.D.C. 2005)).  The absence of non-conclusory factual allegations dooms the claim to failure.

Sprinkled throughout plaintiff's submissions are the terms "harassment" and "hostile work environment."  *See, e.g.*, Am. Compl. ¶ 1 (alleging plaintiff "continue[s] to feel as though the work-place harassment rose to the levels of severe and pervasive levels"); Pl.'s Opp'n at 4 (alleging plaintiff's "work environment began to be hostile for [her] once the co-worker was reported"); *id.* (alleging "mental anguish [she] experienced at Solis Mammography as . . . severe, and pervasive").  These are, at best, vague and conclusory statements which fall short of describing a workplace permeated with intimidation, ridicule, and insult so severe or pervasive

as to alter the conditions of plaintiff's employment. Plaintiff's complaints of being "hovered over and knit-picked [sic]," Pl.'s Opp'n at 5, and being "monitored . . . day-to-day" by supervisors, *id*. at 4, for example, hardly rise above occurrences at a typical workplace. *See, e.g.*, *Taylor v. Haaland*, No. 20-cv-3173 (DLF), 2022 WL 990682, at *4 (D.D.C. Mar. 31, 2022) (allegations that employer monitored arrival and departure times, used coworkers to assist with such monitoring, and allowed coworkers to taunt her were not sufficiently severe as to create hostile work environment); *Bell v. Gonzales*, 398 F. Supp. 2d 78, 92 (D.D.C. 2005) (observing that "sporadic use of abusive language . . . is insufficient to establish a hostile work environment"); *Richard v. Bell Atl. Corp.*, 209 F. Supp. 2d 23, 35 (D.D.C. 2002) ("[R]ude comments, unjust criticism, and stressful working conditions, amount to ordinary tribulations of the workplace that [are] insufficient as a matter of law for a hostile environment case.").

## IV. CONCLUSION

Plaintiff has had two opportunities to plead her case, and the amended complaint fares no better than the original. The Court concludes that the complaint, as amended, fails to state claims upon which relief can be granted. Therefore, defendant's motion to dismiss is GRANTED. An Order is issued separately.

DATE: September 20, 2024                    /s/
                                            RUDOLPH CONTRERAS
                                            United States District Judge